IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SERGIO CONTRERAS PEREZ,

        Plaintiff,

v.                                                 CIV 15-0076 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and

Remand for a Rehearing, with Supporting Memorandum (*Doc. 22*), filed October 1,

2015. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the

parties have consented to have me serve as the presiding judge and enter final

judgment. *Doc. 8*. Having reviewed the parties' submissions, the relevant law, and the

relevant portions of the Administrative Record, the Court will deny Plaintiff's Motion.

## I.     Procedural History

On July 25, 2012, Plaintiff filed applications with the Social Security

Administration for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Title II and XVI of the Social Security Act. *AR* at 261.[1] Plaintiff

alleged a disability onset date of June 15, 2010, and disabling conditions in the form of

hernia, cirrhosis, depression, and memory problems. *Id.* at 265. The agency denied

---

[1] Documents 16-1 through 16-13 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Plaintiff's claims initially and upon reconsideration, and Plaintiff requested a hearing. *Id.* at 72-121, 135-36.

After a *de novo* hearing, Administrative Law Judge Ann Farris ("the ALJ") issued an unfavorable decision on September 9, 2014. *Id.* at 22-33. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on December 12, 2014. *Id.* at 1-6. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 25. At Step Two, she determined that Plaintiff had the severe impairments of "alcohol abuse; alcoholic cirrhosis with esophageal varices; an abdominal hernia; depression; and obesity." *Id.* At Step Three, she concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *Id.* at 25-27.

When a plaintiff does not meet a listed impairment the ALJ must determine his residual functional capacity ("RFC"). *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014). "RFC is a multidimensional description of the work-related abilities [a plaintiff] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1). The ALJ in this case determined that Plaintiff maintained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); however, Plaintiff is only occasionally able climb stairs, balance and stoop, can never kneel, crouch or crawl, and is limited to simple routine tasks with a reasoning level of one. *AR* at 27. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff is unable to perform his past relevant work as a Laborer and Construction Laborer. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 31-32. Accordingly, the ALJ determined that Plaintiff was not disabled from his alleged onset date through the date of her decision. *Id.* at 32.

## II.   Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence,

substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

**III.    Analysis**

> ### A) The ALJ's RFC adequately incorporated Plaintiff's moderate limitations, and it is supported by substantial evidence.

Generally, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours per day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184 at *1. In determining RFC, an ALJ must consider the limiting effects of all [the claimaint's] impairments, even those that are not severe." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks and citation omitted). Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184 at *7.

Ordinarily, an ALJ errs when she "accept[s] some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but reject[s] others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  To this end, Plaintiff argues that the ALJ either ignored or rejected a limitation identified by the Administration's own non-examining physicians, Drs. Simutis and Gucker – specifically, that he "was moderately limited in his ability to 'complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.'" *Doc. 22* at 14 (citing *AR* at 85).

Plaintiff argues that omission of this limitation from his RFC was error because the same is a "baseline mental ability needed for any job." *Id.* (emphasis omitted).

The Commissioner argues that the limitation at issue originated in paragraphs B and C of Plaintiff's psychiatric review technique forms ("PFRT"), and that the ALJ was not required to include these findings in her RFC assessment. *Doc. 25* at 5. The Commissioner's argument misapprehends Plaintiff's argument and the record. The limitation complained of is not taken from Plaintiff's PFRT forms, but rather his mental RFC assessments ("MRFCA"). *Compare AR* at 80 *with id.* at 84-85; *compare id.* at 116 *with id.* at 118-119. Plaintiff complains that the ALJ did not include all of the moderate limitations identified in Dr. Simutis' and Gucker's MRFCAs in the RFC, despite granting their opinions significant weight.

Nonetheless, the Commissioner is correct that the ALJ's RFC determination is consistent with these opinions. Moreover, the Tenth Circuit has recently clarified that the proper use of a MRFCA is by reference to the narrative portion of the form, rather than the questions addressing the severity of singular impairments. *See Smith v. Colvin*, 821 F.3d 1264, 1268-69 n.1-2 (10th Cir. 2016); *Nelson v. Colvin*, __ F. App'x __, No. 15-6226 at *4 (10th Cir. July 12, 2016). This is consistent with prior unpublished Tenth Circuit decisions and the wording of the form itself.

A MRFCA form is broken up into three sections. "Section I is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (unpublished) (internal

quotation marks omitted).[2] Thus, "[i]t is the narrative written by the psychiatrist or psychologist in Section III that adjudicators are to use in the assessment of RFC." *Id.* at 619 (citation omitted); *Nelson*, ___ F. App'x ___, No. 15-6226 at *4 (citing POMS, DI 25020.010 B.1).

The MRFCA in this case states: "[t]he questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." *AR* at 84. Here, under the section entitled "[r]ate the individual's sustained concentration and persistence limitations" Dr. Simutis[3] indicated that Plaintiff is "moderately limited" in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 85. However, on the portion of the form which required Dr. Simutis to "[e]xplain in narrative form the sustained concentration and persistence limitations indicated above" she noted that Plaintiff "demonstrated good memory skills and ability to concentrate and persist at tasks." *Id.* Then, later in the "additional explanation" portion of the form, Dr. Simutis indicated that Plaintiff "can understand, remember, and carry out simple instructions,

---

[2] The Court notes that the consultants did not appear to use the same MRFCA forms discussed in *Carver v. Colvin*, 600 F. App'x 606 (10th Cir. 2015) (unpublished), which relied on POMS DI 24510.060. However, the MRFCA forms used in this case contain the same rating system and four general categories of limitations as special Form SSA-4934-F4-SUP and directed the consultants to discuss Plaintiff's mental capacities in narrative form. Thus, the MRFCA forms are sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS DI 24510.060, the specific psychological limitations at issue should have been included in the RFC. *See Vanvakerides v. Colvin*, CIV 14-0879 SCY, Doc. 25 at 11 (D.N.M. April 7, 2016).

[3] The forms filled out by Drs. Simitus and Gucker are nearly identical, and so the Court refers to Dr. Simitus' for the ease of reference.

make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* Thus, Dr. Simutis' MRFC assessment concludes that Plaintiff can complete an eight hour workday, notwithstanding the moderate limitation identified above. *Sizemore v. Colvin*, No. 5:15-cv0053, 2016 WL 483140 at *3 (W.D. N.C. February 5, 2016) ("By assessing that plaintiff could maintain attention for at least two hours at a time as needed to do simple, routine tasks, the medical consultant indicated that plaintiff could stay on task for an eight hour workday.").

The ALJ expressly incorporated the physicians' "additional explanation" in formulating Plaintiff's RFC. *AR* at 30-31. Moreover, the ALJ limited Plaintiff's RFC to "simple routine tasks with a reasoning level of one." *Id.* at 27. This discussion and limitation sufficiently incorporated the functional limitations of Plaintiff's moderate nonexertional limitations identified by Drs. Simitus and Gucker in Section I of Plaintiff's MRFCA. *See Smith*, 821 F.3d at 1268-69.

In *Smith*, the plaintiff argued that the ALJ erred in omitting moderate nonexertional impairments in assessing her RFC. Specifically, one evaluation found the Plaintiff to be moderately limited in her ability to

- maintain concentration, persistence and pace,
- remain attentive and keep concentration for extended periods,
- work with other without getting distracted,
- complete a normal workday and workweek without interruption from psychologically based symptoms,
- perform at a consistent pace without excessive rest periods,
- accept instructions and respond appropriately to criticism by supervisors,
- get along with coworkers or peers without distracting them or engaging in behavioral extremes,
- respond appropriately to changes in the workplace, and
- set realistic goals or independently plan.

*Id.* at 1268. Applying these assessments from Section I of the MRFCA, the provider found in Section III that the plaintiff could "(1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ in *Smith* "arrived at a similar assessment," concluding that the plaintiff "could not engage in face to face contact with the public and could engage in only simple, repetitive and routine tasks." *Id.* at 1269. The Tenth Circuit found that, while the ALJ "did not repeat the moderate limitations assessed by the doctors" he sufficiently "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.* The Tenth Circuit also clarified that it is the narrative portion of the MRFCA form that controls the ALJ's assessment. *Id.* at n. 2.

Here, as in *Smith*, the ALJ limited Plaintiff to "simple routine tasks" based off of the overall narrative assessments of Drs. Simitus and Gucker. According to the Tenth Circuit, this designation is sufficient to incorporate Plaintiff's moderate limitations (as set forth in the narratives) in completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without excessive rest periods. *See Smith*, 821 F.3d at 1269 (citing *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015) (unpublished)); *see also Chavez v. Colvin*, __ F. App'x __, 2016 WL 3212479 at *1 (10th Cir. 2016) (unpublished) (affirming the incorporation of moderate limitations on the plaintiff's ability to sustain an ordinary routine without special supervision and to respond appropriately to criticism from supervisors by virtue of the ALJ's finding that the claimant "retained the capacity to do simple tasks"). Accordingly, because the ALJ incorporated Drs. Simitus and Gucker's Section III

MRFCA findings as required by *Smith*, the Court finds no error in the ALJ's omission of this particular moderate limitation in her discussion and formulation of Plaintiff's RFC.

### B) The ALJ did not Deprive Plaintiff of Due Process by Refusing to Issue Subpoenas to Drs. Brimberg and Ramos.

Prior to the hearing, Plaintiff requested that the ALJ subpoena the two consultative examiners in this case, Davis Brimberg, Ph.D., and Sylvia Ramos, M.D. *AR* at 357, 359. The ALJ refused Plaintiff's requests, *id.* at 23, and Plaintiff now argues that this refusal violated his right to due process. *Doc. 22* at 15.

Under 42 U.S.C. § 405(d) "the Commissioner of Social Security shall have the power to issue subpoenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation or in question before the Commissioner of Social Security." *Id.* The regulations furthermore provide:

> [w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of a witness and for the production of books, records, correspondence, papers or other documents that are material to an issue at the hearing.

20 C.F.R. § 404.950(d)(1). When a party requests a subpoena, "[t]he written request must give the names of the witnesses or documents to be produced; describe the address or location of the witness or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d)(2). The Commissioner parroted this language in a notice entitled "Your Right to Request a Subpoena," issued in this case. *AR* at 150. That notice states: "I may issue a subpoena that requires a person to submit documents or testify at your hearing. I will do this if the

person has evidence or information that you reasonably need to present your case fully." *Id.* As required by the regulations, the notice requires the following information to be provided: "what documents you need and/or who the witnesses are; the location of the documents or witnesses; the important facts you expect the document or witness to prove; and why you cannot prove these facts without a subpoena." *Id.*

As to both doctors, Plaintiff sought a subpoena on the basis that his evaluations took less than the required time set forth in the regulations. *AR* at 357, 359 (citing 20 C.F.R. § 404.1519(N)). Plaintiff also pointed out what he believed to be internal inconsistencies in Dr. Brimberg's report – specifically, Dr. Brimber's assessment of a GAF score of 55 but sole diagnosis of depression NOS. *Id.* at 357. As to Dr. Ramos, Plaintiff noted in his request that "it is apparent that she consistently does not review medical records and formulates her assessments based on the same conclusion for all claimants regardless of objective and laboratory findings." *Id.* at 359.

In denying Plaintiff's requests the ALJ cited the regulatory language and reasoned that:

> Counsel has not provided information concerning the "important" facts or evidence the requested witnesses would provide, or why any such facts could not be provided without issuing a subpoena. For example, counsel has made no assertion that any of the requested witnesses would fail to provide truthful responses to any questions posed to them in the form of interrogatories.

*AR* at 23.

Plaintiff's due process argument rests in part on the Fifth Circuit's reading of *Richardson v. Perales*, 402 U.S. 389 (1971), that has not been adopted by the Tenth Circuit. Citing to *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990), Plaintiff posits that "by requesting a subpoena, a claimant has the right to cross-examine an examining

physician." *Doc. 22* at 17. Recognizing that *Lidy* does not bind this Court but should be persuasive, Plaintiff asserts that "the question of whether or not *Perales* grants a claimant the right to cross-examine an Administration physician simply by exercising his or her right to a subpoena is an open one in the Tenth Circuit." *Id.*

Plaintiff is mistaken, however. In *Glenn v. Shalala*, 21 F.3d 983 (10th Cir. 1994), the Tenth Circuit "disagreed" with the plaintiff's contention that she was denied due process by the ALJ's refusal to subpoena an examining physician. *Id.* at 988. Thus, the Tenth Circuit has addressed the question of whether a claimant has an absolute right to cross-examine an examining physician simply by requesting a subpoena, and it rejected that position. Rather than viewing such subpoena requests as conferring an absolute right on claimants, the court in *Glenn* reviewed the ALJ's decision for abuse of discretion. *Id.* Later, in *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005), the Tenth Circuit described this standard for issuance of a subpoena as one of making a "good cause showing." *Id.*

In *Glenn*, the plaintiff sought to subpoena the examining physician for the explicit purpose of cross-examination, seeking to impeach the witness. Here, Plaintiff intended to elicit similar testimony, challenging the propriety of the physicians' conclusions on the basis that their examinations did not last long enough, that there were alleged inconsistencies in Dr. Brimberg's report, and that Dr. Ramos issues the same conclusions for every claimant. As the ALJ recognized, none of these topics were aimed at the disclosure of additional "important facts" "reasonably necessary for the full presentation of [Plaintiff's] case." *See* 20 C.F.R. § 404.950(d). The ALJ permissibly

concluded that Plaintiff had not satisfied the requirement of showing why the information sought could not be garnered without the issuance of a subpoena.

Thus, under the abuse of discretion standard, the Tenth Circuit affirmed the ALJ's refusal to issue a subpoena in *Glenn*, and the Court finds that the same result is appropriate in this case. Here, for instance, Plaintiff was able to elicit the length of the examinations through his own testimony before the ALJ, *AR* at 64-65, and had the opportunity to develop other evidence prior to its disclosure and consideration by the ALJ.

By contrast, *Yount v. Barnhart*, 416 F.3d 1233 (10th Cir. 2005) dealt with a claimant who was denied any opportunity to rebut a report created after the hearing held by the ALJ. Plaintiff correctly asserts that the *Yount* case stands for the proposition that "[i]f an ALJ prevents a claimant from cross-examining a physician or rebutting that physician's report and relies on that report in making his or her decision to deny benefits, that ALJ has violated the claimant's right to due process." *Doc. 22* at 18. However, *Yount* describes a factually dissimilar situation from the instant case, and the Court does not find its holding applicable here.

First, as Plaintiff recognizes, the *Yount* Court did not hold that the plaintiff had a right to cross-examine the physician in that case, only a chance to rebut the physician's report. *Yount*, 416 F.3d at 1235. Here, Plaintiff had his opportunity to rebut the reports in this case because, unlike in *Yount*, they were issued *before* the hearing with the ALJ. *Id.* Finally, unlike the notice provided to Plaintiff here requiring a showing of "good cause" for the issuance of a subpoena, the notice provided by the *Yount* ALJ "in no way commanded that he make a good cause showing." *Id.* at 1235.

12

In sum, the Court finds that Plaintiff's due process rights were not violated by the ALJ's refusal to issue subpoenas to the examining physicians in this case. There is no absolute right to cross-examine an examining physician in the Tenth Circuit, and the ALJ in this case did not abuse her discretion by refusing Plaintiff's requests.

### C) The ALJ Adequately Developed the Record

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because she failed to develop the administrative record. *Doc. 22* at 19. Plaintiff's argument is four-fold. First, Plaintiff argues that the ALJ erred in rejecting Plaintiff's limitations on the basis of an absence of medical records. *Id.* at 20. Second, Plaintiff faults the ALJ for the absence of medical records for the twelve months preceding his application. *Id.* at 21. Third, Plaintiff argues the ALJ erred when she implicitly denied his requests for prehearing conference. *Id.* at 22. Finally, Plaintiff faults the ALJ for refusing to order a consultative psychological examination. *Id.* at 21-23. The Court addresses these arguments in turn.

### 1. Absence of Records

Plaintiff generally argues that the ALJ erred by considering Plaintiff's lack of treatment records. *Doc. 22* at 20. Specifically, Plaintiff points to the ALJ's statement that "claimant has not generally received the type of medical treatment one would expect for a very disabled individual" with "significant gaps in the claimant's history of treatment." *AR* at 29. The ALJ also discounted Plaintiff's testimony that he was attending counseling because "the medical evidence of record does not contain any counseling records verifying this treatment." *Id.* at 20-21 (citing *AR* at 29).Yet these comments are but examples of the ALJ's prerogative to resolve evidentiary conflicts with observations

that support her conclusion that Plaintiff's "allegations are not fully credible." *Id.* Thus,

her finding is supported by substantial evidence. *Keyes-Zachary*, 695 F.3d at 1172.

Given that Plaintiff points to no evidence that overwhelms the ALJ's determination that

frequency and extent of Plaintiff's medical treatment was inconsistent with his

complaints of disabling symptoms or which otherwise explains the lack of treatment, the

Court will not disturb these findings. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490

(10th Cir. 1993).

Turning to the absence of Plaintiff's counseling records, Plaintiff faults the ALJ for

failing to request these records. At the hearing, Plaintiff testified he was receiving

mental health treatment at First Choice Community Healthcare for his depression with a

Mr. James. *AR* at 50. Plaintiff testified that he had been seeing Mr. James since June of

2013[4] and that he had an additional appointment scheduled the month following the

hearing. *Id.* In her decision denying benefits, the ALJ refers to this treatment, but notes

the absence of records verifying it. *AR* at 29. The Court finds Plaintiff's reliance on

*Robinson v. Barnhart*, *Grotendorst v. Astrue*, and *Carter v. Chater*, *Doc. 22* at 21, to be

misplaced.

Here, the ALJ accepted Plaintiff's depression as a severe impairment. *AR* at 25.

*Robinson* is therefore inapplicable as that case stands for the proposition that "[i]f

evidence from the claimant's treating doctor is *inadequate* to determine if the claimant is

disabled, an ALJ is required to recontact a medical source, including a treating

physician, to determine if additional needed information is readily available." *Robinson

v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (emphasis added) ("If the ALJ

---

[4] Plaintiff had not, however, received treatment for the previous six months, which he had spent in Mexico. *AR* at 51.

concluded that Dr. Baca failed to provide sufficient support for his conclusions about claimant's mental limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medications on her ability to work, he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). Here, however, the ALJ relied upon Dr. Brimberg's evaluation as *adequate* to determine that Plaintiff's depression qualified as a severe impairment, and there was no need for further evidence.

*Carter* is also not helpful in this case. There, the Tenth Circuit determined that the ALJ should have further developed the record as to the claimant's allegation of depression rather than discounting the diagnosis based on a lack of medical tests to support it. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). Again, in this case the ALJ determined that Plaintiff's depression was a severe impairment, and so further development of the record was unnecessary.

Likewise, *Grotendorst* does not support Plaintiff's position. The *Grotendorst* court declined to find error in the ALJ's failure to develop the record because the claimant failed to object to the lack of these records at the hearing before the ALJ. *Grotendorst v. Astrue*, 370 F. App'x 879, 885 (10th Cir. 2010) (unpublished). Moreover, the claimant's representative assured the ALJ at the hearing that there were no further medical records outstanding. *Id.* The same is true in this case. While Plaintiff identified his treatment with Mr. James at the hearing, neither he nor his representative objected to the absence of these records from the record, and Plaintiff's counsel expressly indicated that there were no further records outstanding. *AR* at 71; *see also Cainglit v. Barnhart*, 85 F. App'x 71, 77 (10th Cir. 2003) (given the claimant's "failure to provide the as-yet-

unidentified records herself, to ask the Commissioner for assistance, or to show the relevance of any records she claims the ALJ should have obtained, we conclude she has not demonstrated the ALJ violated his duty to develop the record."). The Court will not fault the ALJ for accepting Plaintiff's representation that the record was complete, especially where, as here, Plaintiff failed to produce the records at issue.

### 2.   Duty to Procure Plaintiff's Pre-Application Medical Records.

Plaintiff next argues that the ALJ had a duty to develop his medical records for the twelve months preceding the date of his application and failed to do so because the earliest dated medical records in the administrative record are dated July 20, 2012, just five days prior to his initial application for benefits. *Doc. 22* at 21. True, an ALJ ordinarily must develop a claimant's "complete medical history for at least the 12 months preceding the month in which [he] file[s] [his] application[.]"  20 C.F.R. § 404.1512(d). But Plaintiff does not point to which records the ALJ should have requested. *See Breedlove v. Callahan*, No. 97-7024, 1997 WL 572145, *1 (10th Cir. Sept. 8, 1997) (unpublished).

More importantly, when Plaintiff's counsel was asked if there were additional records to be added to the record he indicated that there were not. *Id.*; *see AR* at 71; *Doc. 28* at 3 (counsel makes clear that he responded "no" because "there were no outstanding medical records."); *see also AR* at 135 (request for hearing before the ALJ indicated that Plaintiff had "no additional evidence to submit"). As the Tenth Circuit has stated, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097

(10th Cir. 2008) ("This is especially true where, as here, neither counsel nor the claimant have obtained (or, so far as we can tell, tried to obtain) for themselves the records about which they now complain[.]"). Accordingly, the Court finds no reversible error in the ALJ's failure to request records preceding Plaintiff's application date.

### 3.  Refusal to Hold a Prehearing Conference

Plaintiff requested a pre-hearing conference before the ALJ on June 23, 2014. *AR* at 335. The purported purpose of this conference was to "narrow and clarify and focus the issues of claimant's disability, as well as to determine if the ALJ has a conflict or bias." *Id.* This request was implicitly denied by the ALJ, as a pre-hearing conference was never scheduled, and it was never discussed in her decision denying benefits. *See Id.* at 22-33.

"The administrative law judge may decide on his or her own, or at the request of any party to the hearing, to hold a prehearing or posthearing conference to facilitate the hearing or the hearing decision." *See* 20 C.F.R. § 404.961; *see also* 20 C.F.R. § 405.330(a)(1). The regulations clearly place the decision to hold a prehearing conference within the bounds of the ALJ's discretion, and Plaintiff has pointed to no authority showing that the ALJ abused that discretion in this case.

Moreover, the Court is not convinced that the ALJ's decision not to hold a prehearing conference is reviewable. Under the Social Security Act, review of decisions by the Commissioner is prohibited by 42 U.S.C. § 405(h), "except as herein provided." *Id.* By virtue of this limitation, a federal court has jurisdiction to review only final decisions of the Commissioner of Social Security made after a hearing. 42 U.S.C. § 405(g); 42 U.S.C. § 405(h); *Califano v. Sanders*, 430 U.S. 99 (1977). "Determining

whether judicial review of a particular decision of the Commissioner is available requires an understanding that 'not all agency determinations are final decisions . . . such that the district court would have jurisdiction to review that decision.'" *Vertullo v. Colvin*, 89 F. Supp. 3d 756, 761 (W.D. Pa. 2015) (quoting *Bacon v. Sullivan*, 969 F.2d 1517, 1519–20 (3d Cir.1992)). It appears that the ALJ's decision to deny Plaintiff the opportunity for a prehearing conference, which did not itself require a hearing, is a non-final decision over which the Court lacks subject matter jurisdiction to consider it. *See Love v. Colvin*, CIV 15-0590 KBM, Doc. 22 (D.N.M. March 4, 2016).

### 4. *Refusal to Order a Consultative Examination.*

On August 22, 2014, Plaintiff requested a consultative examination with testing. *AR* at 355. The purpose of this request was to clarify the extent and severity of limitations resulting from Plaintiff's anxiety, depression, and lack of education/inability to read and write. *Id.* At the hearing, Plaintiff again requested consultative psychological testing. *Id.* at 44. Plaintiff requested this testing because, notwithstanding the presence of a mental status evaluation in the file, Plaintiff has a limited education, does not read English or Spanish, has memory problems, and cannot do math. *Id.* Plaintiff accordingly requested psychological testing because he believed that such testing would reveal an additional limitation beyond those already identified in the record. *Id.* The ALJ implicitly denied this request by rendering her decision without ordering the requested testing. *Id.* at 22-33. The question is whether it was error for the ALJ to refuse to procure the requested consultative examination.

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting

*Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997)). "Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Id.* "This duty is not a panacea for claimant , however, which requires reversal in any matter where the ALJ fails to exhaust every line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (citation omitted). Moreover, there is no statute or regulation specifically requiring an ALJ to rule on a request for a consultative examination or to give reasons for the ruling. *Harlan v. Astrue*, 510 F. App'x 708, 710-11 (10th Cir. 2013) (unpublished).

   In determining whether a consultative examination should have been ordered, this Court starts with the proposition that the Commissioner "has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166  (citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)). It is the ALJ's prerogative under this broad latitude to determine whether a consultative examination would be "necessary or helpful" in a given case. *See Lundgren v. Colvin*, 512 F. App'x 875, 879 (10th Cir. 2013) (citation omitted).

> Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, *see* 20 C.F.R. § 404.1519a(b)(4), or where the medical evidence in the record is inconclusive, *see Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.1993), a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.

*Hawkins*, 113 F.3d at 1166. "When a claimant contends that the ALJ erred in failing to obtain a consultative examination, [this Court] is presented with the difficult issue of deciding what quantum of evidence a claimant must establish of a disabling impairment

before the ALJ will be required to look further." *Barrett v. Astrue*, 340 F. App'x 481, 486

(10th Cir. 2009) (unpublished) (quoting *Hawkins*, 113 F.3d at 1169) (internal quotation

marks omitted).

> As is usual in the law, the extreme cases are easy to decide; the cases
> that fit clearly within the framework of the regulations give us little pause.
> The difficult cases are those where there is *some* evidence in the record
> or *some* allegation by a claimant of a possibly disabling condition, but that
> evidence, by itself, is less than compelling.

*Hawkins*, 113 F.3d at 1167. Nevertheless, precedent establishes that an ALJ only errs

in failing to order a consultative examination where there is "objective evidence in the

record suggesting the existence of a condition which could have a material impact on

the disability decision requiring further investigation." *Id.* at 1167.

> [T]he claimant has the burden to make sure there is, in the record,
> evidence sufficient to suggest a reasonable possibility that a severe
> impairment exists. When the claimant has satisfied his or her burden in
> that regard, it then, and only then, becomes the responsibility of the ALJ to
> order a consultative examination if such an examination is necessary or
> helpful to resolve the issue of impairment.

*Id.* at 1167-68. "Isolated and unsupported comments by the claimant are insufficient, by

themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.*

(citation omitted).

Plaintiff argues that the record contains no psychological testing. *Doc. 28* at 4.

However, Plaintiff acknowledges, as he must, that consultative examiner Dr. Brimberg

issued a report in this case wherein he evaluated the effects that Plaintiff's alleged

mental health impairments have on his activities of daily living, social functioning, and

concentration persistence and pace. Plaintiff also contends that the severity of his

impairment is not established and that specialized evidence showing the effects of his

mental limitations is not available from his treatment providers, citing to a letter from

First Choice Community Healthcare indicating that facility does not complete disability determinations or functional capacity assessments on its patients. *Id.* at 4. However, this "specialized evidence" was available from Dr. Brimberg's evaluation, and Plaintiff's suggested reasons for the ALJ to think that additional testing was necessary fall short.

At Step Two, the ALJ found Plaintiff to be suffering from the severe impairment of depression. *AR* at 25. Plaintiff's depression is documented in the record and specifically in the reports of consultative examiners Drs. Ramos and Brimberg. *Id.* at 414. Dr. Ramos indicated that Plaintiff "appears depressed," *id.* at 404, and Dr. Brimberg specifically noted that Plaintiff responded that his mood was "[r]eally low. A lot of depression[,]" and that Plaintiff's "affect was congruent with his stated mood." *Id.* at 413. Dr. Brimburg further stated that Plaintiff's prognosis was "poor due to the severity of [his] physical symptoms, the fact that he is still drinking alcohol, and the fact that he is not currently in counseling." *Id.* at 414. Nonetheless, Dr. Brimberg found that Plaintiff "showed the basic ability to reason and understand information. . . . demonstrated good memory skills. . . . demonstrated a good ability to concentrate and persist on tasks. . . . [and] showed good social skills throughout the evaluation and a good ability to adapt to work and social situations." *Id.* at 415. The ALJ discussed Dr. Brimberg's opinion, relied on it at Steps Two, Three, and when formulating Plaintiff's RFC, and concluded that further testing was not necessary based on the results of the opinion.

The Court finds no error in this conclusion as, in these circumstances, there was no need to further develop the record because sufficient information existed for the ALJ to make her determination as to the limiting effects of Plaintiff's depression. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (noting the lack of evidence indicating

that the claimant's mental impairments caused anything more than mild restriction in activities of daily living, social functioning, and concentration persistence and pace); *Barrett v. Astrue*, 340 F. App'x 481, 486-87 (10th Cir. 2009) (unpublished) (noting nothing more than a mild limitation and finding the claimant's testimony and that of his wife "insufficient by themselves, to raise the suspicion of the existence of a nonexertional impairment."); *Lundgren v. Colvin*, 512 F. App'x 875, 880 (10th Cir. 2013) (unpublished) (affirming where an ALJ relied on evidence from an acceptable medical source in concluding that the claimant's mental limitations were not disabling. "Thus, the record indicates that a consultative examination was not 'necessary or helpful to resolve the issue of impairment.'").

Beyond his depression, Plaintiff argues that any cognitive limitations he has are undeveloped in the record, given that he is illiterate in both English and Spanish, dropped out of school after the fourth grade in Mexico, and is unable to count change or do basic math. *Doc. 22* at 22; *Doc. 28* at 6. However, the Tenth Circuit's decision in *Sneed v. Barnhart*, 88 F. App'x 297, 301 (10th Cir. 2004) (unpublished), leads the Court to the conclusion that an additional consultative examination for intelligence testing was not required in this case. In *Sneed*, an examining physician found that the plaintiff "had goal-directed language, good responses to spoken words, no gross thought disorder, good general information and long term memory, good judgment, full orientation, ability to give his history, fair abstract thinking, fair concentration and fair short term memory." *Id.* at 300-01. Additionally, the agency's PRT and MRFCA forms in *Sneed* did not support a significant limitation in the plaintiff's abilities to understand, remember, sustain concentration and persistence, socially interact, and adapt to changes in the workplace

setting. *Id.* at 301. Furthermore, no doctor recommended that the plaintiff undergo intelligence testing. *Id.*

Here, as in *Sneed*, "[t]he isolated comments about [Plaintiff's] limited intelligence, when viewed as part of the entire record, do not sufficiently raise a question about his intelligence." *Id.* (citing *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989)). Plaintiff points out that when tested by Dr. Ramos he could not remember a list of three words after a minute, and was unable to count backwards by two. *Doc. 28* at 2; *compare AR* at 404. However, during this testing Plaintiff was able to count backwards by one and was able to recall the list of three words immediately. *AR* at 404. Plaintiff also points out that when he was tested by Dr. Brimberg, he was unable to correctly perform a digit span backwards and incorrectly identified the president. *Doc. 28* at 2; *compare AR* at 413. However, Plaintiff was able to correctly perform the digit span forward, correctly identified the governor of New Mexico, identified states which border New Mexico, correctly explained proverbs, and showed reasonable insight and judgment. *AR* at 413-414. This is more than the plaintiff in *Sneed* was able to do. *See* 88 F. App'x at 300.

Furthermore, as noted above, Dr. Brimberg concluded that Plaintiff "showed a basic ability to reason and understand information," as well as good memory skills, a good ability to concentrate and persist on tasks, good social skills, and a good ability to adapt to social and work situations." *AR* at 415. And Plaintiff's PRT and MRFCA forms do not support a significant limitation in Plaintiff's abilities. *See id.* at 116-19. Rather, Plaintiff's MRFCA shows that he has the "basic ability to reason and understand information, has "good memory skills and ability to concentrate and persist on tasks," and the "good ability to adapt to work and social skills." *Id.* at 84-85; 118-19. Plaintiff has

23

pointed to no evidence of record suggesting that intelligence testing, or other examination of his cognitive faculties, was recommended by a medical provider. Even Dr. Ramos, who Plaintiff asserts "noted that claimant needed to be psychologically evaluated," *Doc. 28* at 5, merely indicated that a psychological assessment "*may*" help the evaluation. *AR* at 404.  In sum, Plaintiff has failed to show that the ALJ erred in refusing to order a consultative examination.

## IV.    Conclusion

Plaintiff has failed to demonstrate that the ALJ committed reversible error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 22)* is **denied**.


_____
UNITED STATES CHIEF MAGISTRATE JUDGE